LION OIL REFINING COMPANY *v.* MCCAIN, COMMISSIONER
OF LABOR

4-7003                                      166 S. W. 2d 249

Opinion delivered December 7, 1942.

996

*Davis & Allen* and *Knox, Keith & O'Connor,* for appellant.

*Luke Arnett,* for appellee.

*House, Moses & Holmes,* amici curiae.

GRIFFIN SMITH, C. J. The question is whether $11,-979.74 paid by appellant January 28, 1942, under compulsion of Act 391 of 1941 shall be treated by the commissioner of labor as contributions exacted for the fourth quarter of 1941; or, expressed differently, What did the general assembly mean when in section seven of the Act it reduced to one percent the amount an employer should contribute if for all years through 1941 total payments to the compensation fund, after benefits had been paid, equaled or exceeded ten per cent of the employer's annual pay-roll?

Appellant's five-year pay-roll was $8,009,068.91, the average being $1,601,813.78. Through 1939, 1940, and 1941, the pay-roll was $4,917,513.41, averaging $1,639,-171.14.

Contributions were $203,256.45, against which benefits of $38,492.54 were charged. Net contributions, therefore, were $164,763.91.

Annual pay-roll is defined as the total of wages payable by an employer, regardless of the time of payment, for employment during a calendar year. "Average annual pay-roll" is the mean of an employer's labor pay-

ments for the three or five preceding calendar years, "whichever average is highest."

Section seven makes contributions payable "for each *calendar year.*" The commissioner is directed to prescribe rules regulating payment of contributions where details are not covered by the Act. The statute makes a levy of one and one-eighth percent of pay-rolls for 1937, and "with respect to employment after December 31, 1937, 2.7 percent" shall be paid.

"Future rates" are embraced within a provision which requires the commissioner to maintain in the unemployment compensation division of the department of labor a separate account for each employer. To this account must be credited "all the contributions paid on his own behalf for each calendar year." Benefits payable to an eligible person are charged against the employer's account "in his base period." There is this mandate:

"The commissioner shall, for the twelve months beginning April 1, 1942, and for each twelve-month period thereafter, classify employers in accordance with their actual experience in the payment of contributions on their own behalf and with respect to benefits charged against their accounts, with a view to fixing such contribution rates as will reflect such experience. . . ."

A limitation is that no employer's rate shall be less than 2.7% unless there shall have been three years throughout which an employe could have received benefits, if eligible.

The status justifying a reduction in contributions is expressed in this language:

"Each employer's rate for the twelve months commencing April 1 of any twelve-month period shall be determined on the basis of his record *up to the end of the previous calendar year.* If, at the end of such calendar year, the total of all his contributions paid on his own behalf and credited to his account for all previous years exceeds the total benefits charged to his account for all such years, his contribution rate shall be (a) two percent, if such excess equals or exceeds seven and one-half but is less than ten percent of his average annual pay-

roll; (b) one percent, if such excess equals or exceeds ten percent of his average annual pay-roll.''

Appellant's net contributions of $164,763.91 for 1939, 1940, and through 1941 were ten and five one-hundredths percent of the three-year average pay-roll, which, as heretofore stated, was $1,639,171.14. Benefits for 1941 were included in the total of $38,492.54.

But, says appellee, in order for the excess of contributions over benefits to be ten percent of the three-year average pay-roll, it was necessary to include appellant's payment of $11,579.74 covering the last quarter of 1941, and due December 31; hence, delay having occurred, and the remittance not having been received until January 28, the two percent rate must apply.

This construction is out of harmony with the Act's design to encourage employers who meet all requirements by conducting business in a way to *promote* social security. It inevitably follows that when an employer's pay-roll account as reflected on the commissioner's books shows a minimum of benefits and a consistently increasing credit balance, the plan to *prevent* unemployment has been facilitated and there is harmony with the direction that beginning with April 1, 1942, employers shall be classified ''in accordance with . . . actual experience in the payment of contributions.''

This construction is harmonious with the definition that ''annual pay-roll'' contemplates the total of wages payable (''regardless of the time of payment'') for employment during a calendar year. It conforms to the Act's provision affecting prior payments, that ''No employer's rate for the period of twelve months commencing April 1 of any twelve-month period shall be less than 2.7 per cent, unless the total assets of the fund, *excluding contributions not yet paid at the end of the previous calendar year,* exceed the total benefits paid from the fund within the last preceding calendar year.''

The commissioner, during the past five years, has supplied employers with a ''Statement of Contribution Account.'' Such statement embraced contributions for the calendar year it covered, although actual payment

was not made until January 31 of the succeeding year. The statement sent appellant covering 1941 included contributions chargeable against fourth quarter pay-rolls for 1941.

Act 391 requires the commissioner, not later than the last day of February of each year, to supply the governor with a report covering administration "during the preceding calendar year." It is requisite that a balance sheet be appended. Conforming to the law's requirement, the commissioner transmitted his report to the governor January 31, 1942. The "trial balance" for the state as a whole shows contributions of $15,998,-075.21. Other assets brought the total to $16,650,325.69. With the report was the following:

"This statement was prepared as of January 31, 1942, in order that contributions for the fourth quarter of 1941 could be included." Appellant's remittance of $11,979.74 had been received, and was treated as a part of the fund for determining an employer's contribution and benefit experiences.

For the quarter beginning April 1, 1942, appellant's remittance to the commissioner was $4,660.29, based upon one percent of its three-months pay-roll. A deficiency assessment of $4,660.29 was made, on the theory that appellant's January 28 payment could not be considered in determining whether the unimpaired balance was equal to or in excess of ten percent of requisite pay-roll averages.

While the commissioner is to be commended for requiring judicial determination of a matter he regarded as questionable, it is our view appellant brought itself within the law's provision for a lower rate, and that the deficiency assessment cannot be sustained.

It follows that the court erred in sustaining appellee's demurrer. The judgment is reversed and the cause is remanded with directions to overrule the demurrer and to enter an order quashing the deficiency assessment.